UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

v.  Case Nos.:  5:21cr22/TKW/MAL
                5:23cv8/TKW/MAL

JESUS LOPEZ-GARZA

---

# REPORT AND RECOMMENDATION

This matter is before the court upon Defendant Jesus Lopez-Garza's "Motion to Vacate, Correct or Set Aside Pursuant to Title 28 U.S.C. § 2255." ECF No. 74. After careful consideration of the entire record, including the Government's response, Lopez-Garza's reply, and the relevant law, I recommend the motion be denied without an evidentiary hearing. Even if Lopez-Garza's claim that his conviction should be vacated because he committed the offense conduct under duress was not foreclosed by his guilty plea, he cannot show duress within the meaning of the law, and he is not entitled to relief.

## I. BACKGROUND

### A. Procedural Background

On July 6, 2021, a federal grand jury charged Lopez-Garza in a four count indictment (1) with distribution of 500 grams or more of methamphetamine and marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) and 841(b)(1)(D) after previously having been convicted of a serious drug felony; (2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); (3) unlawful reentry after deportation in violation of 8 U.S.C. § 1326(a) and 1326(b)(2); and (4) possession of a firearm by a convicted felon and an individual unlawfully in the United States in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(5)(A) and 924(a)(2). ECF No. 1. Lopez-Garza was charged after his arrest at a hotel in Panama City Beach, Florida in possession of narcotics, drugs and large amounts of cash. ECF No. 34. Law enforcement, acting on a tip from a confidential source, observed suspicious activity at two hotel rooms Lopez-Garza had rented, and obtained dog sniff search warrants. *Id.* at 1-2. After the trained K9's alerted to the presence of narcotics, officers obtained and executed search warrants on the two rooms. *Id.* at 2-3.

On August 13, 2021, the Government filed a notice of its intent to seek enhanced penalties in this case due to Lopez-Garza's prior felony drug conviction. ECF No. 26; ECF No. 47, PSR ¶ 80.

Lopez-Garza entered a plea of guilty on October 8, 2021, pursuant to a written plea agreement, statement of facts, and sealed supplement. ECF Nos. 31-36, 63. The plea colloquy was thorough and unremarkable. ECF No. 63. Relevant to the instant motion, as part of the plea colloquy, Lopez-Garza affirmed that he had discussed his case thoroughly with counsel, including any possible defenses, and he had told counsel all he knew about the case so counsel could effectively represent him. *Id.* at 30.

According to the Presentence Investigation Report (PSR), Lopez-Garza's total offense level was 40 and his criminal history category was VI. ECF No. 47. The guidelines calculations included a two-level adjustment for obstruction of justice for threatening an individual Lopez-Garza believed was responsible for his arrest and attempting to bribe a jail employee into providing him with a cell phone. *Id.* PSR ¶¶ 44, 45. He also received a two-level downward adjustment for acceptance of responsibility due to his guilty plea, that was increased to three levels at sentencing, yielding a final total offense level of 39. *Id.,* PSR ¶¶ 47, 48, 72; ECF No. 66 at 6, 11.

Lopez-Garza's criminal history category of VI was the result of multiple prior convictions for drug and firearm related offenses, and a federal conviction for illegal reentry of a previously deported alien. ECF No. 47, PSR ¶¶ 79-82. The PSR reflects he was previously removed from the United States at least three times. *See id.*, PSR ¶¶ 79, 80, 82.

Lopez-Garza's applicable advisory guidelines range was 420 months to life (360 months to life on Counts One, Three and Four, plus 60 months consecutive on Count Two). ECF No. 66 at 11; ECF No. 47, PSR ¶ 113. The court sentenced him at the low end of the applicable guidelines range, to a total term of 420 months' imprisonment. ECF Nos. 52, 53.

Lopez-Garza appealed, arguing the district court committed procedural error by relying on a clearly erroneous fact and that it imposed a substantively unreasonable sentence. ECF No. 72 at 2. Specifically, he challenged the district court's finding that he had "closer ties to the head of the supply chain" and that he was "a high-level distributor of illegal drugs." *Id.* at 3. He did not raise the issue of duress, although the appellate opinion reflects that Lopez-Garza told the probation officer he no longer worked for the drug cartel but that he paid them $80,000 to leave his family alone. ECF No. 72 at 3; *see also* ECF No. 47, PSR ¶ 82, p. 17. The

Eleventh Circuit affirmed his sentence on December 7, 2022, and he timely filed his § 2255 motion on December 28, 2022, pursuant to the prison mailbox rule. ECF No. 74 at 14.

### B. Factual Background for Lopez-Garza's Duress Claim

In his § 2255 motion, which was sworn under penalty of perjury, Lopez-Garza explains when he was released from jail in October of 2012, he began trying to turn his life around. ECF No. 74 at 3. His father became ill with cancer, and he borrowed $20,000.00 from an "old friend" named Alejandro to pay for his father's medical bills. Alejandro repeatedly asked Lopez-Garza, who was in Atlanta at the time, to do him drug-related "favors," and Lopez-Garza declined. *Id.* at 5. Eventually, Alejandro demanded his money back and told Lopez-Garza if Lopez-Garza did not have the money, he would have to work for Alejandro's boss to pay him back or Lopez-Garza would not have to worry about his father surviving cancer or his family because Alejandro would torture and kill Lopez-Garza's family, and the cartel would kidnap and torture Lopez-Garza as well.[1] *Id*. at 5-6.

---

[1] This was not Lopez-Garza's first allegedly involuntary foray into drug trafficking. The PSR states that when "he was 15 years old, his cousin recruited him to carry drugs across the border, into Atlanta, Georgia" and he did it because "he had 'no choice' and that he needed the money." ECF No. 47, PSR ¶ 95. Lopez-Garza also had a drug addiction, admitting to the Probation Officer that he had been using an unknown quantity of methamphetamine since 2004, after previous daily use of cocaine. *Id.*, PSR ¶¶ 104, 105.

Lopez-Garza worked for "them" picking up and delivering drugs until he was robbed, which robbery he questioned may have been staged to increase his debt to the cartel. ECF No. 74 at 6. After the robbery, Lopez-Garza briefly stopped answering calls from the cartel until his sister called him from Mexico and told him that men armed with automatic firearms had come to the house and threatened her and her mother. *Id*. As a result, Lopez-Garza continued working for the cartel, paying them $80,000, and believing he still owed $220,000 when he was arrested in November of 2013. *Id*. at 6-7. At the time, he told ICE that he believed his life was in danger. The drug charges against him were dismissed, and in 2015 Lopez-Garza was sentenced to 63 months' imprisonment for illegal reentry. He was deported in December of 2018. *Id*. at 7.

Lopez-Garza did not return to the part of Mexico where his mother lived until December of 2020 when she became ill. ECF No. 74 at 7-8. Cartel members kidnapped him and beat him for two days while torturing and killing other men who were held with him. *Id.* at 8. Lopez-Garza was spared, and the cartel paid a "coyote" to take him back to Atlanta Georgia. By January of 2021, he was doing the same thing he had been doing before to pay off an even bigger debt. *Id.* at 9. He felt he had no choice because to do otherwise would have risked his life and the lives of his

family. Lopez-Garza believes if he had spoken out against the cartel before sentencing, his family would have all been slaughtered. *Id.* at 10. Now, however, the "men or man responsible is dead," and "the people responsible for his present incarceration died while fighting for control of territories and drug routes, thus freeing the petitioner of silence and the imposed death threats." *Id*. Lopez-Garza also asserts he did not raise this issue on appeal because he "did not have this information at that time," presumably the death of the responsible individuals. *Id*. at 13.

Appended to his motion are unsworn letters that purport to be from his mother (ECF No. 74 at 16-17, letter dated November 18, 2022), and his sister (*id.* at 19-21, letter dated November 20, 2022). Each writes, in her own words, that the men responsible for Lopez-Garza's incarceration and the threats of torture are dead, and they encourage Lopez-Garza to present this information to the court, in hopes of securing his release.

## II.  DISCUSSION

As his lone claim for relief, Lopez-Garza contends that his conviction should be set aside because he engaged in the offense conduct under duress; he feared he or his family would be tortured or killed by members of a Mexican drug cartel if he refused to participate. ECF No. 74 at 2. He maintains that the threat to his life and

the lives of his family members no longer exists because the responsible individuals have been killed. *Id.* at 3, 10, 12, 16, 19. Lopez-Garza reiterates in his reply that the threat was still active up until the filing of this § 2255 motion, thus explaining why it was not raised earlier. ECF No. 82 at 4-5.

A "defendant's [unconditional] plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in that defendant's court proceedings," including defenses. *United States v. Sanfilippo*, 91 F.4th 1380, 1383 (11th Cir. 2024) (citations omitted). Lopez-Garza's plea was not "conditional" in this case, and he acknowledged that by pleading guilty he understood he would be waiving any defenses he had to the charges. ECF No. 63 at 11. Therefore, his ability to rely on a duress defense is waived.

Furthermore, the Court notes Lopez-Garza has never contended he brought this issue to the attention of his attorney. Therefore, he cannot circumvent the waiver by relying on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Clairvoyance is not a required attribute of defense counsel's effective representation, and counsel cannot be found constitutionally ineffective if his client conceals relevant information about his case. *See* ECF No. 63 at 30 (Lopez-Garza assures the court he has "told [his] attorney

everything that [he knows] about the case so that [his] attorney could effectively represent [him].")

Finally, the circumstances of Lopez-Garza's case, disturbing though they may be, do not qualify as "duress" under the law of this circuit.

To prove a defense of duress, a defendant must establish he "(1) acted under an immediate threat of death or serious bodily injury; (2) had a well-grounded fear that the threat would be carried out; and (3) had no reasonable opportunity to escape or inform [the] police." *United States v. Harris*, 7 F. 4th 1276, 1292 (11th Cir. 2021) (quoting *United States v. Amede*, 977 F.3d 1086, 1102(11th Cir. 2020)). If a defendant has "numerous reasonable opportunities to inform the police of his predicament," he cannot prevail. *Harris*, 7 F. 4th at 1292-93 (quoting *United States v. Sixty Acres in Etowah Cty,,* 930 F.2d 857, 860 (11th Cir. 1991)). A defendant who claimed he was forced to transport drugs into the United States in his luggage on a commercial flight could not establish the third prong because he "was not in the custody of any drug trafficker during his flight or at the Miami airport" where he had a layover. *United States v. Alvear*, 181 F. App'x 778, 781 (11th Cir. 2006). Neither a general concern about retaliation nor apprehension of future harm establishes the

duress defense. *Harris*, 7 F. 4th at 1293 (citing *Sixty Acres in Etowah Cty*, 930 F. 2d at 860-61); *Alvear*, 181 F. App'x at 781.

A defendant's belief that he had "no reasonable alternative to committing the crime" is evaluated by using an objective standard. *Harris*, 7 F. 4th at 1293 (citing *United States v. Nwoye*, 663 F.3d 460, 464 (D.C. Cir. 2011); *see also United States v. Dixon*, 413 F.3d 520, 523 (5th Cir. 2005) ("[T]he duress defense requires an objective inquiry into whether a defendant's conduct, although illegal, represented her only reasonable alternative to serious bodily injury or death."). A defendant asserting a duress defense who is "under no immediate threat of reprisal" must "either communicate [his] knowledge to police, or attempt to remove [himself] from the scene of illegal activity." *Harris*, 7 F. 4th at 1293 (citing *Sixty Acres in Etowah Cty*, 930 F. 2d at 861 n.2).

The facts set forth by Lopez-Garza simply do not establish duress as he had "numerous reasonable opportunities to inform the police of his predicament." *Harris*, 7 F. 4th at 1292-93.

### III. CONCLUSION

An evidentiary hearing is not necessary to resolve Lopez-Garza's claim because, when reviewed in conjunction with controlling law, "the motion and files

and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015). Lopez-Garza's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 should be denied.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may

bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED:

1. Lopez-Garza's motion to vacate, set aside, or correct sentence, ECF No. 74, be DENIED.

2. A certificate of appealability be DENIED.

Done on July 15, 2025.

s/ *Midori A. Lowry*
Midori A. Lowry
United States Magistrate Judge

### NOTICE TO THE PARTIES

The case was referred to a magistrate judge for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.